**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LYDIA MCLAMB,** | § | |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **VS.** | § | **Civil Action No.** 5:17-cv-00726 |
| | § | _____ |
| | § | |
| **THE PRUDENTIAL INSURANCE** | § | |
| **COMPANY OF AMERICA,** | § | |
| | § | |
| **Defendant.** | § | |

## ORIGINAL COMPLAINT

1.     Lydia McLamb ("Plaintiff" or "McLamb") files this Complaint against The Prudential Insurance Company of America ("Prudential").

### I.
### Parties

2.     Plaintiff, Lydia McLamb, is an individual and resident of Bexar County, Texas.

3.     Prudential is an insurance company licensed to do business in Texas, with its principal place of business in New Jersey.  Prudential can be served with citation by serving its Attorney for Service, CT Corporation System, by certified mail, return receipt requested, at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

### II.
### Jurisdiction and Venue of ERISA Claims

4.     This action against Prudential arises under the Employee Retirement Income Security Act of 1974 ("ERISA" or the "Act"), 29 U.S.C. §1001 *et. seq.*

5.     This Court has jurisdiction over the action pursuant to 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because the breach occurred in this district.

7.      Pursuant to 29 U.S.C. § 1132(h), this Complaint has been served upon the Secretary of Labor, Employee Benefits Security Administration, 200 Constitution Avenue, N.W., Washington, D.C. 20210 and the Secretary of the Treasury, 1500 Pennsylvania Avenue, Washington, D.C. 20220, by certified mail return receipt requested.

### III.
### Factual Background

8.      Plaintiff was employed with VT San Antonio Aerospace, Inc. ("VT") as a Finance Clerk II—a medium-duty occupation. While employed by VT, Plaintiff was a participant in an employee benefit plan that provided group long-term disability ("LTD") benefits ("The Plan") to VT employees.

9.      Plan benefits are paid to VT employees through a group insurance policy issued by Prudential (the "Policy").

10.     The Policy provided LTD benefits to all employees in active employment.

11.     At all pertinent times, Plaintiff was an employee of VT and was a participant within the meaning of 29 U.S.C. § 1002(7) in the Plan.

12.     VT's policy provides 60 percent of monthly earnings as a long-term disability benefit to participants who meet the definition of disability under the Plan.

13.     The Policy provides the following definition of disability:

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you are under the regular care of a doctor; and

- you have a 20% or more loss in your monthly earnings due to that sickness or injury.

After 24 months, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the material duties of any gainful occupation for which you are reasonably fitted by education, training, or experience; and

- you are under the regular care of a doctor.

14.     "Regular occupation" was defined as:

The occupation you are routinely performing when your disability begins. Looking at the occupation as it normally performed instead of how work tasks are performed for a specific employer or at a specific location.

15.     Plaintiff ceased working at VT on November 18, 2014, due to various serious medical diagnoses, including pancreoprivic diabetes, diabetic neuropathy, coronary artery disease, chest pressure and pain, migraine headaches, chronic anemia, and chronic pancreatitis after undergoing surgery to remove a tumor in her pancreas.

16.     Prior to and immediately after surgery, Plaintiff took intermittent FMLA leave from work from May to November 2014 in an attempt to recover. While Plaintiff was on FMLA leave, she was hospitalized several times for varying conditions, including, but not limited to, chest pain, unstable angina, and tachycardia—for which she underwent cardiac catheterization—and abdominal pain. Having serious concerns about Plaintiff's health, VT management reduced her hours, hoping to reduce stress and quicken her recovery.

17.     On November 12, 2014, VT concluded Plaintiff's various medical conditions prevented her from performing the material and substantial duties of her job. VT's human resources department offered Plaintiff three options: 1) apply for part-time work for which VT had no current openings; 2) immediately return to work full-time with the warning that further missed

work time and/or days could result in VT's termination of her employment; or 3) resign from her position at VT and apply for LTD benefits. Plaintiff had no choice but to take the latter option.

18.     On or about December 16, 2014, Plaintiff submitted a claim for LTD benefits to Prudential.  As part of her application for benefits, she submitted a Certification of Health Care Provider completed by Dr. Todd Thames, her family practitioner. Dr. Thames stated Plaintiff was not able to work due to the treatment she received for her diabetes and pancreatic deficiency and those treatments caused unpredictable, frequent flare-ups of worsening symptoms that would require hospitalization or treatment by a physician. Plaintiff also submitted voluminous medical records from various medical providers and hospitals, including Dr. Georgina Bustamante, Brooks Army Medical Center, the Diabetes Medical Center at Wilford Hall Ambulatory Surgical Center, and San Antonio Military Medical Center showing she suffered from frequent migraines with aura, severe bilateral lower and upper extremity diabetic neuropathy pain, poorly controlled blood glucose levels, frequent hyperglycemic episodes, extreme fatigue, and depression and anxiety. These records further reflected Plaintiff's difficulty completing activities of daily living due to her various disabling symptoms.

19.     VT also provided Prudential with a copy of Plaintiff's job description which showed her position required she sit for 5 hours a day, walk 3 hours a day, be able to lift objects up to 25 pounds, and be able to regularly attend work.  These physical requirements placed Plaintiff's occupation within the definition of a medium physical exertion work requirement category for work in the national economy.

20.     On February 19, 2015, Prudential denied Plaintiff's claim. In its denial letter, after providing a summary of the content of Plaintiff's medical records, Prudential acknowledged the physical requirements of her occupation at VT, but concluded her occupation was most similar to

the occupation of Accounting Clerk within the Dictionary of Occupational Titles—a sedentary occupation.  A sedentary occupation involves lifting no more than 10 pounds at a time and is performed mainly in a seated position with occasional walking and standing.

21.     While "regular occupation" was defined in the Policy to mean an occupation as it is normally performed and not in accordance with the specific requirements of Plaintiff's employer, Prudential was not entitled to entirely dismiss the more physically onerous demands of Plaintiff's job at VT.  Based on Prudential's letter, it was obvious its denial of Plaintiff's claim was grounded solely in its flawed conclusion Plaintiff's job was sedentary and not a medium duty job and therefore its decision was arbitrary and capricious.

22.     On August 14, 2015, the undersigned counsel submitted an appeal of the denial on Plaintiff's behalf.  With her appeal, Plaintiff provided additional and updated medical records and the results of a Functional Capacity Evaluation ("FCE") she underwent on July 28, 2015.  In addition, Plaintiff provided legal authority showing Prudential's decision to label Plaintiff's regular occupation as sedentary rather than medium duty was an abuse of discretion.

23.     The updated medical records showed: 1) Plaintiff's migraines had increased in frequency and in severity; 2) her blood glucose levels continued to be uncontrolled due to her partial pancreatectomy; 3) Plaintiff continued to have severe lower extremity pain; 4) she had worsening abdominal symptoms and anemia; and 5) frequent urinary tract infections secondary to her uncontrolled diabetes. Additionally, Dr. Georgina Bustamante, Plaintiff's primary care physician, stated in her April 14, 2015 office visit note, that Plaintiff was "not able to work gainfully due to her chronic medical conditions."

24.     The results of the FCE showed Plaintiff's physical restrictions and limitations placed her in a sub-sedentary physical capacity level. Plaintiff was only able to lift or carry weight

from 3-5 pounds occasionally and 2-3 pounds frequently. Plaintiff could only push or pull up to 10 pounds occasionally and up to 5 pounds frequently. More importantly, Plaintiff could only occasionally (up to 1/3 of the time during a work day) sit, stand and walk, while only infrequently reach overhead or squat, kneel, or crawl.  Therefore, even if Prudential had properly considered Plaintiff's restrictions and limitations in connection with a sedentary physical demand level occupation—which it did not—Plaintiff did not even have the ability to perform such an occupation.

25.    Upon receiving Plaintiff's appeal, Prudential referred Plaintiff's claim to MES Solutions, a vendor that is known for providing biased, purportedly "independent" medical reports to insurers, for an occupational medicine physician to perform a medical records review of her claim.  In its referral, Prudential asked the physician, among other things, whether Plaintiff had any medically necessary restrictions and limitations arising from her medical conditions and whether the results of her FCE were consistent with the documentation in her medical records.

26.    Dr. Tanisha Taylor performed the peer review and submitted a report to Prudential on September 22, 2015.  She did not speak to Plaintiff or any of her physicians, but only reviewed her medical records and the FCE.  In her report, Dr. Taylor opined that while Plaintiff did not have any restrictions or limitations in her ability to sit, grip, grasp, handle, finger, perform above the shoulder activities, or perform upper extremity activities, she could not sit or stand for more than 2 hours at a time and she could not lift more than 20 pounds occasionally.  She also dismissed the results of the FCE because she purportedly could not find any medical evidence to support it.

27.    Based on Dr. Taylor's report—which did not support she could perform her own medium duty occupation—Prudential denied Plaintiff's appeal.  In its September 23, 2015 letter, it once again insisted that although Plaintiff's occupation at VT was medium duty, it was sedentary

in the national economy.  Prudential also relied heavily on Dr. Taylor's opinion as the basis for its denial. Its decision to uphold the denial of Plaintiff's claim was once again arbitrary and capricious.

28.     On March 25, 2016, Plaintiff submitted a second appeal of the denial of her claim. With her appeal, Plaintiff submitted records from Dr. Justin Vigil, Plaintiff's pain management doctor, who reported she suffered from severe pain, with restricted range of motion in her cervical and thoracic spine, continued uncontrolled diabetes and that she had been prescribed Butrans patches, a narcotic, and a TENS unit to help manage her pain. In addition, he noted Plaintiff continued to take Tramadol for pain and Gabapentin for her neuropathy. He also reported Plaintiff received occipital nerve blocks and trigger point injections to treat her pain.

29.     In response, Prudential submitted medical records for a second peer review by a physician who did not speak to Plaintiff or her treating physicians.  This physician, who acknowledged Plaintiff's "sensory deficits of the hands and feet … would support some physical restrictions and limitations" and that some of her restrictions and limitations were likely "permanent," concluded Plaintiff could perform a job that required her to stand and walk up to four hours a day and could perform sedentary work.  While the physician maintained the results of the FCE were not valid, he maintained Plaintiff likely experienced "significant discomfort."

30.     Based on the peer review report and its continued insistence Plaintiff's regular occupation was sedentary, Prudential once again denied Plaintiff's appeal on May 19, 2016.

31.     Plaintiff has exhausted her remedies under the Policy.  To this day, she continues to have severe functional limitations that prevent her from performing her regular occupation, much less any sedentary occupation.

**IV.**

**COUNT ONE**
**Breach of the Plan and Policy Provisions Claim**

50.     Pursuant to 29 U.S.C. § 1132 (a)(1)(B), Plaintiff is entitled to LTD benefits because she meets the definition of disability contained in the Policy.

51.     Plaintiff has complied with her obligation to make proof of claim in accordance with the policy's requirements and she has exhausted her remedies under the Policy.

52.     Plaintiff is entitled to have the Court conduct a trial *de novo* of the issues stated herein because Prudential operated under a conflict of interest and it failed to conduct a full and fair review of Plaintiff's claim.

53.     In the alternative, Prudential's decision to deny Plaintiff's benefits was arbitrary and capricious.

54.     Plaintiff is entitled to LTD benefits because Prudential's decision to terminate her benefits was not based on substantial evidence and its investigation of her claim was so flawed and self-interested that its decision was unreasonable.

55.     The Policy provides that in the instance where Plaintiff is disabled—and therefore unable to perform her regular occupation—then Plaintiff is entitled to LTD benefits under the policy.

56.     Prudential also failed to provide for a full and fair review that took into account all comments, documents, records, and other information submitted by claimant relating to the claim, without regard to whether such information was submitted or considered in its initial benefit determination.

## VI.
## COUNT TWO
## Reasonable and Necessary Attorney's Fees

57.     Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff seeks an award of her reasonable and necessary attorney's fees in connection with the prosecution of this action

### Prayer

WHEREFORE, Plaintiff requests that the Court order:

1.     Prudential to pay Plaintiff her past-due LTD benefits;

2.     Prudential reinstate Plaintiff's LTD benefits;

3.     Prudential to pay Plaintiff's reasonable attorney's fees incurred in pursuing recovery of benefits owed to her;

4.     Prudential to pay Plaintiff pre-judgment and post-judgment interest; and

5.     That Plaintiff recovers the cost of this action and such other and further relief, as the Court may deem proper under the circumstances.

Respectfully Submitted,

**THE LAW OFFICE OF JESSICA TAYLOR, PLLC**

By:      /s/ *Jessica Taylor*
JESSICA TAYLOR
Attorney-in-Charge
Texas State Bar No. 24013546
jessica@jtaylorlaw.com

The Law Office of Jessica Taylor, PLLC
14100 San Pedro, Suite 602
San Antonio, Texas 78232
(210) 402-4022 (Telephone)
(210) 402-1225  (Fax)